Case number 23-5200, Vanda Pharmaceuticals, Inc. Appellants v. United States Food and Drug Administration, et al. Mr. Hughes for the Appellants, Mr. Myers for the Appellees. Good morning, Mr. Hughes, whenever you're ready. Good morning, Your Honor. May it please the Court, Paul Hughes for Appellant Vanda Pharmaceuticals. This case turns on a single question of statutory construction. Does Fast-Track designation focus on the physical properties of the drug, that is, whether the evidence of the drug may benefit patients with unmet medical needs, or does Fast-Track designation turn instead on the status of the sponsor's drug development program? The text and manifest purpose of the statute compel the former reading, but FDA instead applies the latter. It did so here, and we think that was error. Why can't it focus on both? Well, we think, Your Honor, that that would both pervert the intent of the statute and also violate the direct terms. The way the statute operates is there's first an assessment of the drug's potential, that is, the drug as a molecule. Is there evidence that it could meet an unmet need? If the answer is yes to that, the purpose of Fast-Track is for FDA and the sponsor to work together to facilitate the development program. And in the text, Congress very clearly... Sure, but in the current posture, we take as a given that the drug will not be approved unless and until you do animal studies. Well, Your Honor, that is in the complete response letter. There are recommendations about things the company should undertake in order... This is the clinical hold, which you challenged and lost. Uh, well, there is a clinical hold, yes, Your Honor. Which says, no, human studies are necessary to get the approval under the statute. The clinical hold says animal studies are necessary to justify human studies, and you've refused to do the animal studies. Well, Your Honor, I think that's inaccurate in a couple of respects. So first, to begin with, and I think this is a bit of a merits issue that's not directly before the court, but the legal landscape from when the clinical hold issued to where we stand today has shifted pretty profoundly. And that's what the FDA Modernization Act 2.0, because at the time of the earlier litigation about the clinical hold, there was, as the district court judge found at that time, statutory language suggesting that animal studies may be required in essentially all cases. There's now a pretty profoundly different statutory structure against which FDA operates that Congress very clearly said we need to move away from mandatory animal testing in all cases and have a much more specific analysis as to what sorts of toxicity studies work in any given case. Now, again, I don't think that issue is before the court directly. My friends try to suggest that we're challenging somehow collaterally the partial clinical hold. And let me assure you, we are not. Certainly the way it comes across. We're challenging the partial clinical hold.  How could you not read these reason? I think that was an issue. Can I Greg, you can finish up. Just sorry. Just just help me understand. You're saying there's been an intervening statutes since the clinical hold was put in place. Yes, your honor. The question, the FDA Modernization Act 2.0. And this is why, though, just to get to the focus of the case, the fast track program, it's designed to facilitate enhanced conversations between a sponsor and FDA over development programs, especially those that are troubled. It's for FDA and sponsors to work together because there's a molecule that as its physical properties has promise, but is not reaching the hands of the American public where it can do good. That's the point of the program. The agency says this should occur at the stage, not once you submitted an application. Why is that wrong? Well, you know, I think the agency is quite clear that fast track can be approved anytime up until marketing approval. That's, I think, pretty plainly in the materials. I want to say it's joint appendix page 691. And here in the complete response letter, if the court looks that they submitted under 28 at page nine, for example, there's a whole list of recommendations that FDA has for the sponsor and suggest the sorts of studies the whole purpose of fast track would be to facilitate to enable those conversations between FDA and Vanda to occur to help those studies. Let me make sure I understand the only issue that's before us based on what you've presented is FDA's denial of fast track designation. Yes, your honor. Parties have gotten off into a lot of collateral issues. That's the only issue. The agency. Let me just tell you my concerns, please. The agency says there is no point to fast track. Because that should, if it's going to occur, it occurs at the IND stage. You file an application and they make a compelling argument. There are other ways to expedite consideration once you file an application. But fast track makes no sense. So the first question I have is why are they wrong on that? And if they are right, that's the end of it. As far as we're concerned, the case is over because the only issue is whether you were improperly denied fast track consideration. The other thing I'd like for you to answer for me, if you would, please. What do you think you're going to get? If you win on that issue that you haven't already gotten or that is like, what's the remedy? The only issue before us is whether you were improperly denied fast track designation. That's the only thing that we should be considering. And let's say you win on that. You were improperly denied and the agency is wrong. It doesn't have to be at the IND stage. It can be at any stage. Let's assume they're wrong and you're right. What would we order happen?  Very, very, very important. Three questions. If I could take that in three parts. The first is the premise of what we're asking for, which I think is important. The second is, is there still a lot of controversy now that we're in the NDA stage and not at the IND stage? And the third is, if we're right about that, what do we get? I don't want you to think I want to wander into the muddle of mootness. I understand all of those arguments. I'm asking you a more specific, direct question. If you win, what do you think you'll get? Yes. Okay. So to begin with the premise, I agree with your honor of the premise. There's one question here. Was fast track rightly or wrongly denied? And we think that essentially turns on one question, which is the statutory interpretation issue we've put forward. So I agree with your honor on the premise. To jump to the court's last question about what is it that we get? We get two things that the statute provides us. One, facilitation of the development program. And two, expedition. And this is really critically important at this very juncture where this development program lies. With the complete response letter, there are essentially two things that the company can do at this point. And again, the complete response letter came last week. But the regulatory structure gives, well, there are three options. They can withdraw entirely and be done. I can assure you that's, I don't think, occurring. The second is a resubmission. That is, go do more studies that FDA has laid out in the complete response letter. Or third, proceed with the process. And as this court in Nostrum Pharmaceuticals two years ago say, attempt to convince senior leadership at FDA that the complete response letter is wrong. So I want to talk about those two branches because those are the two things that could occur from now. If the company were to choose to engage in more studies and go down the resubmission pathway, we are precisely at the point of fast track, which is having conversations with not just low-level folks but more senior officials at FDA to say, here's how you can design these studies. Here's what you need to do. And can listen to our concerns about how actually enrolling the number of patients that they suggest need to be enrolled is essentially impossible. So you're talking about in light of the agency's current concerns, there would be opportunities for expedition. Yes, your honor. Challenge before us is the agency's past responses on fast track. But if we're, if this drug is designated as fast track, that would stay with the drug until, unless and until the agency at some point remove that designation. And so a designation of fast track would have very significant consequences at this moment as the agency, as Vanda wants to go to the agency and says, we need to talk about this because we have serious concerns about things you've said. We have, we want to have a meaningful scientific conversation with the agency. That's what fast track allows pharmaceutical sponsors to be able to do in a meaningful way. That's what the company wants and needs. So having fast track. As my colleague has already mentioned, the case is at a different posture now, and they've confirmed the position about what you're missing. And you continue to balk at their clinical hold holding, which you not battled. What's what's the expedite? There are several. You're not willing to, to pursue the studies that the agency has said that you must pursue. I assume you can continue to challenge the agency's rulings within and see what happens. But if you're not willing to do any accommodation on the clinical hold, you've let that go. And they've said that's critical. And you're not prepared to move. What's the fast track? Well, your honor. First, I don't think the company has taken or stated any public position about the complete response letter in the six days or so, but you have taken a position on the clinical hold and you said you're not going to do that. Well, your honor, you view the case differently. Your honor, I don't think the company has said anything and I couldn't tell. You didn't pursue an appeal of the clinical hold. Yes, your honor. But in terms of what it is the company is going to do at this moment in response to a complete response letter that came out, was it five, six days ago, the company has not made any public statements or committed one direction. That's why I'm not understanding. What is it we would order happen? All we want is fast track status. Why would we give you that when you have not satisfied their disposition on the clinical hold? Why would this court say, yeah, you're entitled, assuming they're wrong on when fast track occurs, IND or after you file an application. Let's assume their position is incorrect and you're right. You can get fast track at any time. Let's assume that's right. I don't understand what we would give you. Well, your honor, I want to be clear about this. This goes to our fundamental disagreement on the statutory construction. We do not believe that a clinical hold is a valid basis standing alone to deny fast track status. Has FDA ever granted fast track status after a clinical hold? I don't have the full universe of FDA decisions. That may be a question for my colleague. So I don't have particular insight as to that. The reason I ask that question is because Judge Edwards is referring to what you have not done in compliance with the follow-up letter or recommendations. But I wanted to know just generally if FDA has ever done that, because if they've never granted fast track status based on a clinical hold, then is that a different matter than you not complying? Well, your honor, what we have put into the record is, I think, roughly six or so prior fast track determinations. And in every case, they use the same worksheet. And the worksheet asks, is there a clinical hold? And if the answer to that is yes, the instructions say fast track shall be denied. And our submission here, and this takes us to the central legal issue of the case, is that is a legal error. And the reason behind that is because FDA is focusing on the drug development program and not the molecule. We'll get to the legal error before you sit down. But I think what we're all probing, one way or another, is why does it matter? Right? Well, as I said, there's something here that you folks in the business may have in the back of your minds that seems terribly important to you. It certainly doesn't leap out on the pages. So again, let me just start again on the importance moving forward. Because as I said, there are two branches we could take. We could, as Nostrom Pharmaceuticals explains, try to convince senior FDA leadership that we are, in fact, correct in the submission as it now stands. That's option one. Option two is we could do the resubmission process, which is we do additional work, and then we come back to FDA. In either of those two scenarios, fast track matters quite a good deal. And I'd be happy to explain why that is for both of those. Let me ask you this. If you get fast track status, will you commit to doing animal studies? Right. Your Honor, that's a question I don't have authority to answer. I don't know the answer to that question. I mean, unless you answer that, unless either you say yes to that question, or unless this recent order that just came out undid the clinical hold, which I don't think it did, but it just doesn't matter. That, again, we can stay on mootness for a second. We can go to the merits. Our fundamental merits position is that is a wrong way to think about when fast track is available. I'll spot you the merits. Let's say you were absolutely entitled to fast track status and all the benefits come with it. That wouldn't have barred FDA from saying, given where we are now, you need to do animal studies. But working with FDA, I mean, that suggests that there is an absolute and that there can't be an agreement between the parties, either because VANDA changes its position or FDA changes its position. And again, I know you've asked about VANDA changing its position, and that is, of course, something that the company always has the right to do. But it's also critically important to recognize, as I said earlier, the law has changed since the clinical hold came into place because Congress has said the mass killing of dogs for a pharmaceutical study isn't always justified. And you have to do a case-specific analysis, and you have to look at new technology that exists now that didn't exist decades ago to see is the benefit of mass destruction of animal life justified in any particular case. But isn't it up to the FDA to consider what alternatives it would want? It's not something that you all get to require of the FDA. No, you're right. I think it's specific to each case. And what we want is to have a conversation with FDA to actually sit down and talk about the science and say, what about these alternative models that FDA Modernization Act 2.0 specifically requires the agency to consider? In our view, the agency has never given us an answer as to why those alternative models are insufficient here. Fast-Track would have the facilitation where we could have those scientific conversations. And maybe FDA could convince Vanda. Maybe Vanda could convince FDA. The point is, we don't know the outcome of that facilitation of those meaningful, high-level conversations until they occur. And you've never had conversations with the agency officials? Your Honor, we've had the bare minimum of the regulations. Your concerns about the clinical hall questions have never been discussed with agency officials. That's not the way I read the record. Well, Your Honor, I've been party to most of those calls. And I can tell you, most of the time, we have very junior FDA officials who come and tell us those are regulatory questions that they cannot answer and will not discuss with us. And so we do not have meaningful conversations with anyone at the agency to actually engage on these issues. We think Fast-Track would change that. I know you're frustrated because you don't think we understand your world. We're frustrated because you appear not to understand our world. What would our orders say? OK, they win. Now go back and talk. That's what we would say. And talk fast. Your Honor, I want something less than that, even. What I want is the court to find that the denial of Fast-Track, that is a specific agency action that's before you, was premised on a legal error. That is all the court needs to find. And then this goes back to FDA. That's the one ask I have of you, which is a very straightforward ask under the EPA. Could we possibly say with any assurance that the denial of Fast-Track was wrong, assuming you can get it once the application has been filed, assuming the agency's wrong or not? How can we say it's wrong when the clinical hold question looks to be a rather strong problem for you, a weighty problem against your position? That is, you have refused to change your position. And the agency, at least at first blush, appears to reasonably say, no, with the clinical hold problem as it is, that's it. There's nowhere to go. You have refused to move. And so the agency says, here we are. Well, Your Honor, this is why I think my request is much less than the court thinks that I'm asking of it. All we want is a set-aside of a denial. We are not asking the court to compel the grant. What we say is we want a set-aside of an order that was based on a legal flaw. And let's be clear about this. There are a lot of new facts that have occurred in the last two and a half years since Fast-Track denial occurred. We're not saying the court needs to look at all of those intervening facts in two and a half years and dictate to FDA what the conclusion is. What we want is EPA set-aside relief under 7062, where then you say this was based on a legal error. Here's what the statute, the proper framework. Send it back to FDA, work with Vanda, and then we'll come to a new conclusion. What's the legal error? The legal error is what does the statute focus on for making the determination as to whether or not a drug qualifies as a Fast-Track product. Our position, just to crystallize this legal error, is the statute is focused on what evidence about the physical properties of the drug is put forward. FDA's position is they can look at the entire development program, and if they think there a problem with the development program, deny on that basis. Our fundamental submission is that puts the cart before the horse, because the purpose of the Fast-Track program is to actually work with troubled drug development programs and help bring those products to the market. You've got to show that it demonstrates potential to address unmet medical needs. And the agency's position, at least on paper, looks like a perfectly reasonable response in light of your resistance with respect to the clinical whole. I mean, you haven't shown, at least as far as I can see, that this will address unmet medical needs. So that's what you want the disposition to hinge on? And your honor, this is exactly where the legal dispute between me and my friend occurs, is because their view is this focuses on a review of the regulatory development program. Our view is this actually looks at what do we know? What are the physical properties of this drug? And there are a few reasons I think our interpretation is the correct one. First is in this statute, 356, Congress routinely distinguished between the term drug and the term development program. Congress knew that these are different things, and it used these terms with precision. It says, does the drug have potential? And when we step back, this is what makes sense. The word potential, it seems like it's the key word in the statute, right? Are you a hockey fan? Let me give you a hypothetical. I hope this is helpful. Suppose I say, does Alex Ovechkin have the potential to break Wayne Gretzky's record? Really, really famous hockey record. He's very late in his career. He's very close to the record. Not clear whether he'll get there, right? Most people would say, yeah, he has the potential, right? Suppose, I'll take that as a yes. I'll accept the premise. Suppose the NHL now suspends him for five years. And five years from now, he's going to be too old to play. If you ask me, does he have the potential to break the record? Nothing about him has changed, but there's just an intervening legal rule that makes it impossible he will ever get there. I would say no, he doesn't. He can't get to the end point. And this situation feels more like that. But the question is, potential is a very important word. But the question is, what is it that has potential? And what the statute says is, does the drug have potential, not the current drug development program have potential? And this is an important distinction because the drug is an immutable thing. Either it works in particular conditions or it doesn't. And what we're trying to do is gather the evidence to make a determination. It will not and cannot cure unmet medical needs unless and until it's approved. Unless and until it's approved. But that's the purpose of Fast Track, is to say if there is a resolvable obstacle between the pathway of where we are today and where we can get to get a valuable drug in the hands of American patients, the purpose of Fast Track is to work with the agency to see if those obstacles can be removed. So to your question, if there is a physical possibility, can a suspension be lifted? Perhaps. The question is, what are we looking at? Are we looking at the drug as the physical thing? Are we looking at the development program as it exists as a regulatory matter? Congress chose to use the words drug and potential. And again, because the purpose of this program is to fix troubled development programs, not to define this by, are you going after long term or short term? Because you're quibbling with that too. And let me be very clear about that, because I think that was murky in the briefs. And probably we could have done a better job clarifying that. This is my secondary fallback argument. It is not my principal argument between long term and short term. My principal argument is FDA applied the wrong legal standard. And if we're right about that, we think that's all the court needs to decide. If you disagree with me in that principal submission, we also think that their analysis of the drug development program was wrong because they focused on long term rather than short term. But I want to be clear, these are two- You're saying what they did. I'm asking you a direct question about what is your position with respect to are you applying for long term versus short term? In terms of the- The application? Yeah. The Fast Track application. Yes. The Fast Track application, Your Honor, it did not specify a duration of treatment. It said- You were looking for pursuing assistance with chronic conditions. We were looking for assistance with symptoms of gastroparesis broadly. And we didn't have a durational limit in part because the breakthrough therapy recommendation, the decision that we cite throughout the briefs, this was the letter signed by Dr. Bites, specifically advised us to look at gastroparesis, including particularly for a short term indication. That was- Let me make sure I get a record of this cite for the court. This is at page 657 of the joint appendix, where FDA says it sees, quote unquote, a potential therapeutic role for tridipidine, particularly for short term relief of nausea in gastroparesis patients. So- Short term need is not an unmet medical need. Sorry? It's not an unmet medical need, short term. And Your Honor, let me be clear. I disagree with that. But I don't think- You can disagree with me on that and still think that we win our principal argument. I'm just looking at the record. The record doesn't support any assertion to that effect, as far as I can see, short term. That's where you're bogging down, it seems to me, when you're ignoring what my colleagues asked you about the long term. Again, I think we're seeing the record the same way. The agency was essentially saying, and it explains the clinical hold, the need is long term. And you're not willing to do the tests that will show us that there's something really here. And so here we are. Now, what's to talk about? So I want to be clear, Your Honor. Even if the court disagrees with me on the long term, short term issue, that doesn't say anything about our principal argument about the legal standard. So I just want to be clear what I need to win and what I don't need to win so we can separate those. Well, the long and short term have a lot to say about unmet medical needs, which is the statutory standard. Our point is that- What they're saying, as I understand it, you're not showing anything on the short term, or if you want to work in the short term, fine. But on the long term, there's some serious work to be done. And that's where there's potential medical needs. So let me respond to this in a few different ways. I'll start with the merits between the short term and the long term. And then I'd like to try to explain why I also don't think, if you disagree with me on that, that is in any way adverse to my position as a whole. So on the question of a short term versus long term need, to begin with, there is no therapy for idiopathic astroparesis whatsoever. So when we exist in a world in which there is no therapy for a pretty important critical condition, a short term therapy does meet, by definition, an unmet medical need. And this is important because the only drug approved in this space, Reglan, is a drug that FDA approved for diabetic gastroparesis, but it is a short term indication drug. And the point that I just- My problem is that when you're submitting your application, you, as the movement of that application, should be more specific because that's the one, when FDA is reviewing it, they're looking at how you're presenting it. Short term shouldn't be like a fallback position. You're going one route or the other, and that's how they're evaluating the application with respect to them requesting these clinical studies. About the precise indication, this is where we talk in our briefs, and I think FDA agrees with us as a broad matter, indications are iterative in the process, in the give and take of an agency and the drug sponsor, indications change all the time. So you generally start with a broader indication, and then you work with FDA in saying, okay, maybe this is too broad, but the evidence is a little bit more tailored in this direction. So proposing an indication that doesn't have a durational limit on it, but with the view of that's part of the give and take of an agency, I think is an appropriate place to be. And then under the short term, as Judge Edwards was mentioning, you've already got a drug out there that's going to be assistive, so then that doesn't help. Well, for short term, it's only approved for, there are two branches of gastroparesis, idiopathic and diabetic. It's only approved for the diabetic. And second, it's a very unsafe drug. It has the highest level of FDA rating of a black box warning saying, if you take this drug, it has very serious side effects. And again, let me just read what FDA itself said about short term. This is, I mentioned this a minute ago, it's at Joint Appendix 657. FDA says it sees, quote unquote, a potential therapeutic role for tradipidine, particularly for the short term relief of nausea and gastroparesis patients. Given FDA has told us that there's a role in short term relief, I think it's challenging for them to say that short term, there's categorically no unmet need in that scenario. But was that comment to be taken that you should have follow up, that you should further supplement your application in that regard? Could we look at it as them trying to help you out to say that there might be some possibility that this could get approved, but you have more work to do? Oh, yes, your honor. I don't disagree with that. The point is that the pathway they're suggesting is looking at it as a short term indication. And I just say that to respond to the court's point, the challenge of there is no short term need here. We disagree with that. But to come back where I started. But you didn't want to focus on short term. Your honor, we want to focus on gastroparesis and we want to work with FDA. Or whatever they would give us. In fact, the long term, there's work to be done. They told you to focus on short term. You didn't want to. Your honor, we focused on gastroparesis as a whole with the view of we want to work with what FDA. Short term, long term. You did not want to be pushed to focus on short term. Your honor, I think that suggests that this nature is some adversarial process between us and FDA, where the real nature is, and this is why we want fast track, it's supposed to be collaborative. Where we say, we're trying to study gastroparesis, we're trying to get a drug that's going to help gastroparesis patients. Let's work together to figure out where this evidence leads and what becomes approvable. That is, again, I think goes to why fast track is critical. But the court can disagree with me on the long term, short term, and still agree that the fundamental legal issue that we've talked about is all we need in order to win that the fast track denial was unlawful and should be set aside. Okay, we'll give you a rebuttal. Thank you, Mr.  Good morning, Your Honors. May it please the court, Stephen Myers on behalf of FDA. I have a lot to say about the merits, but before I get there, I want to start by talking about mootness, because this case has really been entirely taken over by events. When we filed our brief in February, we explained that Vanda had already submitted a new drug application and thereby gotten all of the benefits to which it might have been entitled for a fast track designation. In other words, the point of fast track was to facilitate the submission of the application. As we explained in our letter last week, FDA has now completed its initial review of that application by issuing a complete response letter. It's not a final order. It's not a final order. That is correct, Your Honor. And so the ball is now in Vanda's court to decide. Let me ask you, underlying this argument, I'm sorry to interrupt you, but I don't have this question answered because I'm curious. Your argument, the initial argument that I'm seeing between the parties as I read this is you're saying if you can request fast track, it can only be requested during the IND period. They're saying that's not true. Even if we file an application, we can still seek it. What's your statutory support? You may have a guidance that says that. What's the statutory support for that position? Because it seems to me it's critically important that we have that strength, because that's critical to your argument, including your mootness argument. So I want to be clear about what our argument is in terms of what the effects are and what the benefits are of a fast track. No, that's not my question. My question is, what is your statutory support for the position that an applicant can only seek fast track at the IND stage, not once an application has been filed? So the statutory site is 356B. I know, and you think that's support for your position? So again, I just want to be clear on what the position is I'm trying to articulate. And it's really not about when a fast track application can be filed. It's about what you get from fast track. And all of those benefits pertain to the developments of a drug. Once an NDA is submitted. Let me ask, can we clear that table so there is no such argument? They can raise the fast track question at any time they want. Is that right? You're not conceding that, because that's not what the briefs say. So let me make sure I have that straight.  Anytime. So, candidly, I am not exactly sure when you can request fast track. But it doesn't really make any sense to think about it. Because the benefits of fast track, again, all pertain to things that happen while you are developing the drug. And then, you know, there's the possibility of rolling. I'm looking at it the way I look at it as a judge and read your argument. Your argument clearly suggests that that's what your position is. That they can't advance it beyond. Now, you support it by saying. And this makes sense because there's no advantage to doing it later on. You're saying once the application is filed, there's no advantage. So the statute certainly can't just. And certainly once an application has. But I don't see the statute saying that. And you're not supporting it. Again, your honor, I'm pointing to 356 B1 and B3, which I think are the key provisions. But I just I want to take a step back here and emphasize that once there has been a complete response letter again, the ball is in Vanda's court to decide where to go from there. Here's here's a simple to that. I think if I understand the law correctly, capable of repetition, yet evading review is a simple response to your current most current mutinous argument. I mean, it was there before. It's certainly here now. You say, well, but we've done something which is not a final order. And I'm saying, yeah, but if they really want to push mutinous, capable repetition, yet evading review, because they're going to come back and say, see what happens. This moves too fast. They think we can only ask at the stage and we'll never be able to get this resolved. We think there's a legal issue to be resolved now and even more so because they're telling us to come back and start again and start doing some new things. Their fast track argument has half. Now they're saying we want it done on fast track. So there's a legal question we have to decide. So a couple of points there, your honor. The first is that, as my colleague said, Vanda has not committed to any direction at this point in response to the complete response letter. So we don't know as we stand here today or certainly you started off wanting to clear out the mutinous. I'm telling you can't clear it out. And I will repetition, yet evading. Right. So so two questions, I think one might recur with respect to the development of tridipitans for the treatment of gastroparesis. That can only happen if Vanda elects to continue developing tridipitans for that purpose. There are no benefits from fast track. If Vanda chooses to go up the agency appeal process towards judicial review, that's not what fast track is about. Fast track is about having more meetings and development in the development process with FDA. So if they elect to say, you know what, FDA, we think you got it wrong. We're going to say fast track when you're trying to expedite the process. You'll get more meetings. So why wouldn't that in and of itself be so? So those are meetings. Those are meetings that pertain again to the development process, not with respect to the appeal process. And so if Vanda elects to do the agency appeal and ultimately try to get back in this court, fast track has nothing to do with that. Fast track is only going to be relevant if they say, you know what, FDA, like interesting points in your letter. Let's keep working together. And as my friend said, they have not committed to that. More broadly on the point about this case being or this issue being capable of repetition, I think the critical point is that the question in this case is whether or not FDA properly applied the statutory standard to the set of data that was before it in February of 2022 when it denied the fast track application. Any further application of that standard will be to an entirely different set of data that at a minimum includes the results of the phase three study and this much is public in Vanda's press release, a study that did not meet its pre-specified primary endpoint. And so, you know, any future consideration of fast track is going to be on an entirely different record. You know, and so any determination from this court is not going to be relevant to that. And what's that with respect to priority review, though? I'm sorry, Your Honor. With respect to priority review, is that a different review than fast track review? So priority review is separate from fast track review. That's correct. Fast track gets you eligibility for rolling review, and then there's a separate standard for priority review. Here's the problem I have with your mootness argument, which is even before you get to the exceptions to mootness, the benefits of fast track status are facilitate the development and expedite the review of the drug. Right. Why couldn't this be useful for, put aside for a second, the clinical hold, which I want to ask you about. Of course. Just writ large, there's a pending application before FDA. You said in the complete response letter, not good enough yet, but everyone seems to agree that's part of an iterative process. And if we're not talking about development, we're at least talking about review. So again, that gets them expedited review. That seems to keep the issue live. So I think as my colleague said, Vanda has not committed to what they're going to do in response to the complete response letter. In other words, I take that to mean they have not committed to continuing to develop this drug in consultation with FDA. And so it is not clear that there will be anything left to fast track. Right. I guess I'm trying to, I'm trying to separate in my mind the question whether the case is because you all just issued a response letter or whether, I'm not sure if this is a mootness issue, but or whether our getting involved is pointless, let's just loosely say, because they won't do the animal study. They seem to be different issues. They are different issues. And I'm happy to talk about both. And I'm skeptical about your mootness argument. I'm interested in the animals studies. Then let me, let me please move to the, to the animal studies. But am I missing something on the threshold mootness? Well, I think the critical point, like the really critical point on threshold mootness that I just want to underscore is that none of this matters to Vanda unless Vanda is going to continue working cooperatively with FDA to try to develop this drug. Leading into animal studies. Well, but put the animal studies aside. Imagine that clinical hold had never issued and there was just a complete response letter that said, you know, we can't approve it yet. Here are the deficiencies, period. If certainly if Vanda just says, you know what, we agree this drug doesn't work, then this case is moot.  But I mean, it seems like they want to work with you as much as they can without having to say, yeah, we'll do the animal study. I hope that, you know, Mr. Hughes can answer that question on rebuttal because I heard him to say it's not yet clear if Vanda is going to work with FDA or seek a hearing before the commissioner, which again leads to judicial review back in this court. The administrative appeal for which. Fast Track has nothing to do with that.  There are no Fast Track does not get you faster appeals or anything like that. So if they're going that direction, none of this matters. And they haven't said yet. Well, but if they take the administrative appeal and then seek judicial review for the current what's the term? CRL, the response letter that wouldn't preclude them from continuing the process with FDA going forward if they lose all that. Right. I suppose that's true. But that's all speculation at this point. They haven't I haven't heard them commit to the fact that they're going to do that and their burden to show mootness. And it seems like they're and then let me also engage. Let me also try to underscore the point then that even if this court were to find that Fast Track was wrongly denied again in February of 2022, which I think I heard Mr. Hughes say is all the relief they're asking for, that would not be relevant to a future Fast Track request on additional future data that is necessarily going to be on a different record and is going to include the results of the phase three study that again, Vanda itself said it would structure the inquiry was not successful. It would structure the inquiry. I mean, they've isolated what seems to be a pretty clean and maybe interesting and close legal question about whether the Fast Track inquiry looks at the nature of the drug or also includes the ongoing negotiations with the agents. So I think the answer to that is that it would arrive and arise in such a different context that it really would not that a judgment from this court would not address. But let me move from talking if I may. Let's go to animals. Let's talk about the merits and animal studies quickly on that. Sure statute itself potentially makes this not moved just because we talked about the expedited review and the facilitation and more meetings to be had. However, when you get to the issue about that, they won't do the clinical studies, then that affects the remedy. So maybe we're here, but then there's nothing for us to do because they won't comply. So, again, we're trying to make two separate arguments and mootness, which I've been talking about so far this morning. The argument is that in light of the complete response letter and pending further action from Vanda, there's nothing left to fast track. OK, so putting that let's put that aside. Now, let's talk about animals. Let's talk about is that an alternative mootness argument or is it something else? I don't think it's a mootness argument. I think it's a merits arguments. So our argument is that if you look at the statutory text, which requires a demonstrated potential to address unmet medical needs, there are basically two elements there that are that are highly relevant and demonstrate why the decision here was correct. So, first of all, it needs to be more than just a theoretical potential. It needs to be a demonstrated potential. And so FDA looked at the data that was sorry. This is just now you're talking about what the statute means. Right. I had thought there was a separate issue. Not mootness and not what the statute means, but the point, even if they're right about what the statute means. If they're unwilling to do animal studies like this dispute just doesn't matter. So their unwillingness to perform the animal studies, which is the basis for the clinical hold, which, again, cannot be challenged at this time, feeds into why FDA determined that they had not satisfied the statutory criteria for fast track. I agree with that. I wonder whether it has independent significance. But all right, let's do it. You can go to the merits. OK, so so so on the merits on the merits. The question is, again, had have they demonstrated the potential to address an unmet medical need? And FDA looked at this in a very practical, fact specific sort of way. You're yeah, your position makes a lot of practical sense. But you said, have they demonstrated the potential? And the statute says, has the drug. Right. Demonstrated that that seems like it's a not insignificant difference. So I guess I would answer to that the potential to do what? And it doesn't say the potential to work in a test tube or work in a lab or have a particular chemical reaction. It says the potential to actually address an unmet medical need. And so if there are barriers that stand in the way of the drug being developed and being brought to market, those are barriers that relate to the drug and are going to prevent it from being able to address an unmet medical need. And another point I would make about the relevance of the clinical hold as pertains to the drug is to emphasize that the clinical hold didn't just arise out of thin air. This wasn't just like a bureaucratic box checking exercise. It's explained in the appendix that J, I think, 4 to 6 to 4 to 9, that there were specific reasons with respect to tridipitans based on existing animal studies to be concerned that there might be toxicity issues and therefore to want additional non-rodent studies before allowing the human trials to go longer than 12 weeks. And so our position is that the attempt to sort of divorce the drug from the drug development is really incorrect. And if the drug cannot ultimately have the studies that's going to lead to it potentially being approvable, then it's not going to be able to address or have the potential to address unmet medical needs. And that's the problem here. Your friend said there was an intervening statute which undercuts the basis for the clinical hold. Yes, he does say that, and it's a little bit puzzling to us because the clinical hold was litigated to final judgment for Judge Bates. Vanda didn't appeal. It did not raise a claim about the Modernization Act in district court in this case. And if I could point the court to page 62. The Modernization Act was on the books at the time. At the time in district court, correct. Page 62 of the joint appendix. This is counsel for Vanda. I want to be clear. We're not saying that the question of what safety data is necessary or not is before this court, not at all. This case can't be a challenge to the clinical hold. That was litigated to finality elsewhere. If I could just very briefly make one additional point. In addition to the clinical hold, the determination letter that's in the record carefully explains the problems with the existing data that FDA had before it at the time, even putting aside the potential of getting additional data. And it explains that there were problems with the existing safety data because it didn't specify the treatment assignment, dose, indication, et cetera. That's at JA335. And then with respect to effectiveness, it points out at JA333, things like the definition of nausea-free days weren't specified. There was concern that patients were using rescue medication in addition to tridipidens. So there were problems with the data that existed before FDA at the time it made its decision, even putting aside whatever data was unable to be generated as a result of the clinical hold. And so ultimately, this is a fact-specific, very careful scientific judgments about what data was before FDA. Are they not at least entitled to a judgment, assuming, looking at the case on your side, are they not at least entitled to a judgment that says in response to one of the legal questions at least I saw separating the parties, you suggested they've got to ask for fast track at the IND stage. They said they can ask for it at any point. They're at a stage now where they could argue we're at least entitled to have that, if that's a legal issue, to have that cleared up and say there is nothing that supports the agency's position that we're limited in any request for fast track treatment to the IND stage. The statute doesn't say that, it's not supported, and the court can issue a judgment on that point because there are things now that they may or may not do where the question of fast track could come up again. And if I were on their side, I would not want to face you saying, no, we're past the IND stage now, you've filed an application, we're not even going to consider fast track. I guess I'm not sure how that question is presented here, where fast track was requested during, you know, at the IND stage. It wasn't. Excuse me? It was not, that's the whole point. My understanding is, in reading your argument, you're saying, I thought your argument was, it must be, if you seek it, it can only be sought at the IND stage. And it was not, that's right. So my understanding... Suppose we rule that's wrong. Isn't that a legitimate judgment that they should get? That your position is not supported by the statute? I'm just not sure there's the daylight. You declined to support it. I'm just not sure there's the daylight between the parties on that position. As I understand it here, FDA, excuse me, Vanda asked for fast track in October of 2021, which was well into the IND process. I can picture the pages that I'm reading where you have this long list of why it would make no sense to even think about fast track once we're at the stage where an application has been filed. Do you mean the NDA stage, John? Is that what we're asking about? What you're asking about? So our point that we made in the briefs is that once an NDA has been submitted, there is no benefit. At the point when the NDA, when I say the application, that's what I mean. Yes. So perhaps we're talking past each other with respect to an IND and an NDA. Right. Our position is that there are no benefits of fast track that apply. Okay, but you have not cited us to anything in the statute that supports the conclusion. And therefore, you must ask for it during the IND period. You haven't here and you're at the application stage. And so you can't ask for it. Are they not at least entitled to a judgment that says your position is not correct? I don't think so because here they applied for fast track while an IND was pending. And then the point that we made in our brief is that once an NDA has been submitted, there's simply no benefits from fast track. And then certainly once a complete response letter has issued, then there are like really no benefits from fast track. But I don't think the question of whether a fast track application can issue, you know, or can be made after the IND stage is presented here. Can be taken seriously by the agency, can be considered, can be acted on, call it what you want. Your argument seemed to me to suggest that once you're at the application stage. The NDA stage, correct. The NDA stage, that's what I'm calling the application stage. Right. I'm sorry for using the wrong term. Once you're at that stage, you said at least there's no point to this. That's correct. To me, that means, no, I'm not going to look at this as you were suggesting there's no statutory support for it. No, I certainly don't mean to be saying there's no statutory. Disagreeing with my suggestion. If it was in a judgment that says there's nothing here to support an agency position that they cannot consider a request for fast track at the NDA stage. So, I don't think we have said that, and I, you know, maybe need to double check our brief on this. I don't think we have said that you may not submit an application. Well, you didn't say they may not. It's consideration of fast track requests. What we've said is at the point of the fast track. I understand you saying it's pointless for us to be thinking about it. Now. Correct. Yes. But that doesn't mean that as a matter of statute, they're foreclosed from trying. It doesn't seem pointless to me having listened to the argument today. I can see good reasons why they might ask for fast track at this stage. Once an application has been filed, the NDA has been filed. So, and again, I want to underscore that here, not only has the NDA been filed, it has received a complete response letter, right? So, we're past the NDA stage at this point. And what I'm suggesting to you is maybe this is pointless. We're at a stage now where they may do something. When you say they, you mean Vanda, your honor?  We'll be essentially starting again. So, the same question may come up again and you may come back and say, there's no point to our considering now that an NDA has been filed. So, I don't think we're saying that. If Vanda were to respond to the complete response letter. Right. By coming back at that point and saying, actually, guys, you know what? We want to continue working with you. And we want fast track. And we want fast track. They can absolutely make that request. Well, at least it took me a long time to get that clear in mind. That may be me, not you. In any event, that's certainly the way I read it. Well, if it's me, I apologize. But let me just underscore this. If it's me, I apologize. At least we're clear now. Thank you. I just want to be clear. Yes, if they decide, and to my knowledge, they haven't yet to continue trying to develop the drug, they can ask for fast track again. They haven't committed to doing that. As far as I know, it's going to be on a completely different record if they do. And they don't need a judgment from this court to ask for fast track again. If there are no further questions, we'd ask the court to either dismiss the appeal as moot or affirm. Thank you. Thank you. Thank you, Your Honor. I'd just like to start with what must be a misstatement from counsel. He suggests that the FDA Modernization Act existed at the time of the original clinical hold. That's completely inaccurate. I think he said at the time of the district court. At the time of the district court's decision. Yes, Your Honor. That's inaccurate. The district court's decision was January 31st of 2020. The FDA Modernization Act, as FDA points out in their brief at page 48, took effect in December of 2022, nearly two years later. It was legislation that was passed in 2022. This was legislation that Vanda worked for and lobbied in part on the basis of the district court decision that suggested more requirements for dog testing. Vanda, having got that decision, actively engaged with the legislative process to go to Congress to change the law. That law subsequently has changed, and FDA has never worked with Vanda to actually implement this in this case. So it's a little surprising that FDA is telling us something factually inaccurate. Moving on to the mootness issues. It's their burden. They have to demonstrate it. I can tell you now, though, Vanda is absolutely committed to moving forward with this drug. That is why we are here. The expedition and the facilitation requirements have every bit of bearing moving forward, as the court suggested. The NDA also is not over. If the NDA process were over, Vanda would have a right to be in court challenging the CRL, if it chose, as final agency action. We know under Nostrum Pharmaceuticals that's not the case. FDA can't say that it's not final to us a week ago or two weeks ago in other litigation and that it's final here. The NDA process is continuing to proceed. To step back, what is Fast Track designed to do? It is to take a drug that could actually help Americans with real needs and get through barriers. My friend focused on the existing development program barriers. There's no doubt the court's talked about it. There are barriers with FDA. The purpose of Fast Track is to actually work collaboratively to get through those barriers, because what Congress wants to do is help Americans who could benefit from a drug that has physical properties demonstrating its potential. That drug, Tredyffin, has that if it's judged via the proper legal framework. What we ask is the court to identify that legal framework. That's all the court needs to do. And then from there, we can work with the agency for all the other questions that resolve. But it's not moot. Procedural barriers, right? You get meetings. You get expedited treatment. You get all of that. It doesn't change substantive law. Well, I think there's a big difference between what I would call a resolvable issue that, for example, the hold-related issue. It's resolvable either because Banda could choose to do the study or second, FDA could change its mind under the FDA Modernization Act 2.0. That is a resolvable issue. The question is, does the drug, is this the sort of drug that is worth trying to have the FDA and the drug sponsor work together because it has those properties? I mean, to go back to the Ovechkin example your honor gave about the potential. I think the question there is... Nothing about Ovechkin changes. There's just a rule that disables him from going forward. I think the question, your honor, is that to answer your question... And that takes away his potential to break the record. So what I would ask in that scenario is, is there a procedure by which he can go to the NHL commissioner and apply to have a suspension lifted? But that is, the analog here is all about undoing the clinical hold. And I thought we had to just take that as established. No, well, no, your honor. And even the clinical hold doesn't mean the drug can't be approved. That is not a categorical barrier to drug approval. It's a categorical barrier to how long you can study the drug for. But it's not a barrier... Means it can't be approved unless you do the animal studies. Well, it goes to the duration issue, your honor. It goes to how long it can be approved for. You don't have to have longer-term studies if you approve a shorter-term drug. So it is not a categorical... For the unmet need for idiopathic... Gastroparesis, which... Might or might not have... Which is what FDA told us that we should be looking to study. So it's not a categorical barrier. But the question, and again, this gets to the purpose. If there are barriers... Fast-Track is irrelevant for drugs that are sailing along, that everything is great, that FDA is giving two thumbs up on the development program. They don't... Maybe Fast-Track's helpful and that's fine. But that's not the purpose. The purpose is to take drugs that actually would help people but are not getting to market to work with the sponsor and FDA to actually get those products to market. That's why it focuses on the drug, not on the development program. I think we understand. Any other questions from my colleagues? Okay. Thank you, counsel. Thank you. The case is submitted.
judges: Katsas; Childs; Edwards